Your Honor, this case is about due process at sentencing. I don't think anyone here denies that defendants are entitled to due process at sentencing. The general question is, how much process is due? Here, the specific question is, whether it's consistent with due process for a court to receive, in confidence, a probation officer's sentencing recommendation and justification thereof. I submit that the answer to that specific question is no. In district court, pre-sentence reports are disclosed 35 days before sentencing, and this triggers a highly formalized process of comment and objection. Where the probation officer's confidential letter is also disclosed, and that happens with 18 out of 22 of the active judges now in the Central District of California, counsel's comments tend to address also the probation officer's recommendation. So there are objections to the sentencing report, but there are also comments about the probation officer's sentencing. Kennedy Are you attacking the receipt by the sentencing officer of the confidential recommendation of the PSR? Yes, Your Honor. As being unconstitutional? As being a violation of due process, yes. And what's your authority for that? What's your best case? My best case is Burns, Your Honor. And that's a Supreme Court case, a 1991 Supreme Court case. And in Burns, the United States Supreme Court considered whether a court could sua sponte depart without giving advance notice to the parties that he was – the court was going to do so. In that case, the court looked at Rule 32, which doesn't seem to provide for that kind of notice. But it looked at Rule 32, and it said, well, Rule 32 requires that the defendant be given an opportunity to comment on matters that are related to sentencing, and clearly a court's decision to sua sponte depart from the then-mandatory guidelines is relevant to sentencing. And so giving a court – giving a defendant an opportunity to comment is completely worthless if they don't have notice as to what it is that they're going to be sentenced based upon. And in reaching that conclusion, the court applied the doctrine of constitutional doubt. Was there a confidential recommendation involved in the Burns case? No, there wasn't, Your Honor. I didn't think so. So the question there was whether a departure downwards or a refusal to depart downwards should be preceded by notice. Was there any lack of notice here to Mr. Baldrige as to what the – the judge was about to do? There may well have been a lack of notice, Your Honor. Not may well, but was there? Was there a lack of notice? And what was it? There's no way – Your Honor, there's no way for the defendant to know that, because after Booker, the sentencing court is required to look at all 3553A factors. Because most sentencing courts receive these letters not in confidence, we know that, generally speaking, these letters contain all sorts of analysis, all sorts of unstated assumptions. Ms. Chen, the PSR recommended 162 months at the high – high end of the range, right? Yes, Your Honor. Your defendant got 144 months. Yes, Your Honor, but after – How is that – he got notice he might get 162 months and he got 144 months. He didn't get the low range of 132, so he got in between. Your Honor – Closer to the low range than to the high range. What's lack of due process about that? After Booker, the court is not bound to the range of 100 and – I'm sorry, I can't remember, 32 to 162 in this case. Let me ask you one further question at this point. Is it your position that the submission of this case should be deferred until the en banc court in Zavala and Cardi come down with their opinion? I would have no objection to that, but I would think that even if that en banc decision came out and said that there's a presumption of reasonableness if it's a within-guideline sentence, in this case, we have a due process violation. We don't know what – I don't know. I believe the court may know because the sentencing court did submit the document in camera for the court's review. But I don't know what was in that sentencing recommendation. I can't know if there was something that violated my client's rights. I can't know if the probation officer referred to additional facts or assumptions that – Let's assume – let's assume, and we have – at least I've seen the letter. Let's assume the letter says something like this. I recommend that the defendant be sentenced to X months because of A, B, and C. And A, B, and C are all factors that are discussed in the PSR. Now, what is there in that letter that the defendant does not have notice of? I guess it depends on what you mean when you say A, B, and C. If it says A, B, and C, meaning – It could be, you know – I'm being hypothetical now. But, you know, it could be criminal history. It could be the nature of the offense. It could be that somebody will – whatever it is. But it's – assume it refers to facts that are stated in the PSR. If there – Which the defendant has seen. Now, what about a letter like that gives rise to a lack of notice? Judge Tashima, if that's all the letter said, specifically A, criminal history, not a characterization of the criminal history, but just A, criminal history. No. Let's say there's a characterization. So what? I mean, that's – you know, that's the probation officer's opinion, right? Well, Your Honor – In fact, the entire recommendation is an expression of opinion. In my opinion, he should be sentenced to X months. Your Honor, the reliability of this probation officer was questioned and raised by the trial counsel in the case on two occasions. The first one was when Judge Otero had some question as to whether the client had actually suffered abuse or not. And in that instance, Ms. Eggly, trial counsel, explained that she had, in fact, raised that issue to the probation officer in a letter, and that that information did not make it into the pre-sentence report. The second occasion on which the trial counsel questioned the reliability of the probation officer is with regard to the death threat enhancement. She received the addendum on the day of sentencing, and she noted that the probation officer's characterization of the conduct – so this goes back to what Judge Tashima was raising – was inaccurate, that the characterization of the conduct in the addendum conflicted with the characterization of the conduct that was in the PSR. So if a probation officer simply says, criminal history, see paragraphs 34 through 40, nature of offense, see paragraphs 10 through 15, that does not raise a due process violation. But when the probation officer is allowed to characterize that conduct in a way that the defendant is not allowed to combat, our argument is that does raise a due process violation, because the cases – and the reason I referred to Burns is because Burns is also a case in which all the facts were disclosed to the parties. There was no question that there were extra facts that the court was considering. It was the court's application of the law to the facts that the defendant did not receive notice of. Similarly, in a case where a probation officer characterizes conduct or characterizes a criminal history or characterizes even the probation officer's interactions with the defendant, that is something the defendant doesn't receive notice of. And in this post-Sentencing Reform Act age, where we know that there's much more formalized sentencing proceedings than there were before the Sentencing Reform Act, our contention is that that is a violation of due process. Do you have any reason to believe that the confidential sentencing recommendation included any information other than that was already found in the pre-sentence report which was made available to you? Your Honor, it's obviously outside the record. But I was a trial attorney in the Central District for five years, and those kind of confidential letters often contain perhaps not a new fact, but characterizations of facts, which — which — Well, but aren't we bound — is this panel not bound by United States v. Gonzalez saying that this Court may properly receive confidential communications from a probation officer regarding sentencing so long as no additional factual information is imparted that was not previously disclosed to the defendant? Your Honor, United States v. Gonzalez was a pre-Sentencing Reform Act case. As the Supreme Court held in Mistretta at that time, sentencing courts had unfettered discretion. But Rule 32 specifically states the court may direct the probation officer not to disclose to anyone other than the court the officer's recommendation on the sentence. That's a post-enactment. Yes, Your Honor. And our — Let me return to the issue. Is the burden not upon you to show, by whatever means, that the sentence — that the probation officer's confidential communication contains something that Gonzalez says is prohibited? I would say no, Your Honor, first because it's a burden that is almost impossible to meet without access to that document, and it would require this Court — it would require us to object in every single case, bring it before this Court and have the case. And second of all, I don't believe that Gonzalez — Wait a minute. Now, the district judge is required to state his or her reasons, right, especially after Booker, for the sentence that's imposed. Yes. And doesn't that tell you what the judge relied on? And if there was something that was not known to the defendant, wouldn't it surface at that time? Your Honor, I trust district courts to try their best to tell us exactly what they're relying on. But we know that courts form impressions based on all sorts of sources. And the reason they want the probation officer's recommendation is because that's a source that they trust. Our only argument is, what is the interest in not allowing the defendant also to see that source of information? That's for Congress to decide. And they decided that the Court could ask for confidential information. We are not a policy group, are we? Your Honor, I would — You're out of time, by the way. Could I just respond to that, Your Honor? I would argue that Rule 32 can be narrowly construed to be constitutional. If the probation officer's report just said, I recommend 162 months, period, that would be a recommendation on sentencing, and we would not dispute the constitutionality on that. And I would argue that under Burns, this Court should apply the doctrine of constitutional doubt and construe that rule so that it would be constitutional. I'm out of time. Thank you. Counsel, how are we going to determine whether there really is or is not anything not contained in the PSR but in the recommendation without making it available to defense counsel? Well, Your Honor, I think there's actually two responses to that. First of all, it has been made part of the record. So at least if the Court is referring to we as in we, this Court, the Ninth Circuit, the Court has that availability of the document in the record. But I think more than that, I think that the important factor is that booker, post-booker, pre-booker, it doesn't matter. The defendant still has the same incentive to raise all the arguments that are necessary. In other words, we're arguing from the point of the sentencing process that we should be arguing from the same factual universe. And with the disclosure of the PSR, that's what we did here. And then there can be no question as to what the sentencing factors are that a defendant needs to address. For example, it's the 3553A factors. Everybody knows what the factors are that should be addressed. So a defendant has the incentive to address all the factors that the probation office's recommendation will depend upon. For example, we have evidence in the record that the district court disclosed during the sentencing hearing that the probation office felt like the defendant in this case was a danger. Well, that was something that the defense addressed in their sentencing position papers before the district court without disclosure of the recommendation. And why? Because that's the kind of consideration that is within the 3553A factors. It goes directly to the history and characteristics of the defendant. They addressed his criminal history. They pointed out in their sentencing papers that, oh, his criminal history is overstated. He only stole a few chicken breasts. He's not a danger. Kennedy. Could you please give me the citation to the excerpts of record where one would find the confidential recommendation of the probation officer? Your Honor, the district court disclosed in excerpts of record 224 that the probation officer recommended the highest he could of the guidelines and that the probation officer felt like the defendant was a danger to the public. If the court's question is specifically the point of the excerpts of record where the court says, here, I'm handing over the two- to three-page document, because that's usually what it is, that is the confidential sentencing recommendation. That never happened, Your Honor. But the subsequent one. So, therefore, the two- or three-page document is not part of our record. It has been made part of the record on appellate review, Your Honor. Is it now in the record? I believe so, Your Honor. Could you give me a page citation to it so I could look at that? Your Honor, it was made part of the appellate record under seal. I don't think either party has seen it. I believe that the court has it because the district court ordered to that effect. But I can't give you a record site because I simply don't know what it is because it was made a part of the record under seal, Your Honor. Can you confirm that the district court did comply with 32E3 because that requires the court to keep it confidential either by local rule or by order of the court? Was there the local rule is not applicable. Was there an order of the court to keep that confidential? It sort of depends a little bit, Your Honor, on what you mean by order. And I think that Rule 32E3 was complied with in this case for two reasons. First, order, at least on the government's interpretation, doesn't necessarily mean that the court has to, in every case, issue a minute order that says, I direct a probation officer not to disclose a sentencing recommendation. There are certain judges that accept those recommendations confidentially, and they do so usually by standing order. And I think that, you know, if I can borrow from Justice Scalia, Your Honor, there's no reason why district court judges need to despoil our northern woods with a minute order in every case simply to affect what they would have done otherwise. But even if the court doesn't find that particularly persuasive, I think apart from the standing order, there was an application filed in this case for the disclosure of the probation officer's recommendation. And that order was denied. So in effect, that denial is the order in this case. So I think that Rule 32E was complied with, and I think it does authorize the court to accept the recommendation confidentially. And that brings us ultimately to what this appeal is asking this court to do, and that is to declare a portion of Rule 32 unconstitutional, to break with the 9th Circuit President, to create a conflict with every other circuit to have addressed this issue, including the 10th Circuit, the 7th Circuit, and the 4th Circuit, and to ignore evidence in the record that suggests both that there was no error, and if there was error, that the error was harmless. Specifically with respect to the cases, the government has cited the Gonzalez case that was 1985, the Doe case in 1984, where the facts were very similar to here. It was a probation revocation, supervised release or probation revocation that was at issue in Doe. And the court disclosed the progress report from the probation officer. I think it was probation officer Scott. He says, okay, you can have the progress report of probation officer Scott, but I'm not going to disclose the confidential recommendation as to sentencing options. And the court says, that's fine under Rule 32. There's no problem with withholding the sentencing recommendation, but disclosing the progress report. And in addition to those two 9th Circuit cases, there's also the Davis case from 1976, which similarly indicates that ex parte contacts with the probation or from the probation office to the court are entirely proper. That's the language in Davis. And I think that there's two things that are interesting as a result of those lines of cases. First is that it's important to recognize that these issues are not going to come up only during sentencing. These issues will also come up during supervised release revocation hearings. And as the court well knows, it's common for district judges to speak with a probation officer before these hearings, usually right before perhaps, or just say, how has this defendant been doing on supervised release before we get to the probation hearing? But counsel, suppose the probation officer includes a fact which is not in his probation, a pre-sentence report, and is really off the wall. For instance, that Baldrige beats his wife all the time, right? And Baldrige isn't even married, never has been married. Suppose he's just flat wrong. He had a mental lapse and he put a fact in that didn't occur. How can we know that that didn't occur unless we see the confidential communication and show it to counsel for the defense? I think it happens for two reasons. And one goes back to a comment that Judge Tishima made during the prior argument. The first is, Your Honor, that the district court is required to articulate reasons for its sentence. And so in doing so, the district court will articulate reasons. And it will say, well, not only did this defendant, who had 16 criminal history points, he also was beating his wife. And I find that that is a further reason why he is a danger to the public. And that is something that's obviously subject to appellate review. The defendant could rightly come in at that point and say, hey, look, we didn't know anything about that. That's completely wrong. But I think the more fundamental point is a point that's made by a decision that the government didn't cite in its brief, and it's United States v. Fuentes, 30th, 3rd, 1047, where it indicates that this court commonly trusts its district court judges. And that's really what we have here is we have an underlying notion that district court judges can't be trusted to receive a confidential report from the probation office and to not disclose facts that need to be disclosed. Your Honor, if the court goes back and looks at this confidential sentencing recommendation from the probation office, and there's a paragraph in there that says, I, probation officer, went out and I did a field interview. I didn't, by the way, I didn't put this anything in the PSR. And I happened to see the defendant assaulting another inmate at MDC when I went over there just to see him. That would be a fact that wouldn't be disclosed in the PSR. And I think on that basis, if there weren't some other evidence or record, then the court would be rightly concerned and there would be an error. Now, of course, there is other evidence in the record to show that the district court didn't rely exclusively or even compellingly on this report. And this is the argument that the government made in its brief. It's essentially that the court mentions the probation officer's report three times. First, it excerpts the record 195 and 197 when it listed among the various other materials that the court considered in sentencing. It listed among the party's position papers, the addendum, the supplemental materials. The second is it excerpts the record 224 when the court discloses the substance of the recommendation and, importantly, does so before hearing from counsel and before hearing from the defendant. So they had notice of what the substance of that recommendation was and they had an opportunity to respond to it. And the third instance, Your Honor, is it excerpts the record 234 when the court expressly declines to follow the probation officer's recommendation. So even if there were such a fact in the sentencing recommendation, which the court can see for itself and which I highly doubt there is, there is still evidence in the record that shows that the sentence should be affirmed because it wasn't a major factor in the court's analysis. But to return to a question earlier with respect to how do we know and what have you, I think the point I was trying to make with supervised release recommendations is that there are interesting practical problems that result if the court were to adopt the rule that the defense wants. When a court was trying to speak with a probation officer right before a supervised release hearing, these things are often quick. It may be the case that the court, if it just wants to call up and say, hey, probation officer, I just sentenced somebody to a custody term. I'd like to know how they're doing. Are they responding to that? That now may need to be recorded. You may need to call a court reporter back into chambers and say, well, we've got to disclose this. That way if there's going to be a later sentencing hearing, they may be entitled to this information. I think more than that is that the defense makes a number of policy arguments. And I think one of the policy arguments that also bears in consideration is that the rule that the defense wants, I think, would unduly invade the judicial process. And I say that because the probation officer's sentencing recommendation is a lot like a law clerk's memo. In fact, I was at a sentencing where I was waiting to make an appearance before Judge Klausner, also in the Central District, and he made just that point when another public defender asked for a sentencing recommendation. I treat these almost like a short memo from my law clerk. And if it's the case that the defense is entitled to everything, regardless of the fact that the probation officer, when preparing a pre-sentence report, is acting as an arm of the courts and part of the judiciary, then I think at this point that defense has, there's no principle basis on which to distinguish a law clerk's memo to Judge Otero. Or frankly, if this court was sitting here and there's a bench memo that says, I think that the defendant in this case got off easy with the 144 months. I reviewed the PSR and it says that he was robbing a bank every other week and he got away with $20,000. I'd take a look at that and he made threats of death in the process. I think that this court should affirm just because he didn't get 162 months, and I don't know what we're arguing about. Arguably, under the defense's theory, that is information that's adverse to the defendant and should be disclosed right now before this Court makes a decision. Your time is up, sir. Thank you very much. Thank you, Your Honor. Would you like a minute to rebut? One minute. Thank you. First of all, this is not like a law clerk's memo. I remember when I was a law clerk and I wasn't allowed to go out and interview witnesses. In fact, I wasn't even allowed to do an Internet search. There's a fundamental difference between a probation officer investigating an offense and a law clerk looking at the record, what we all know is the record, the disclosed record, and making recommendations to their judge. Second of all, Your Honors, the government's argument that while everyone knew all the factors in play is simply contrary to Burns. In Burns, of course, everyone knows what all the factors are in play with regard to sentencing, because we know that there are sentencing guidelines and departures, and yet the Court still held that the Court was required to disclose to the defendant what the specific factors in play were. And finally, this goes to your question as to how to determine if something's in the record. There's one way to determine if there's something in the record. You can – I'm sorry. There's one way to determine whether the probation report and the probation letter have any kind of conflict or any additional information in the letter, and that's for you to review. But what you don't get in that review is how the defense attorney and her client might have responded to that information in the record. The Supreme Court in Gardner had a similar situation where they were presented with a document in the excerpt of record before the Supreme Court, and the Supreme Court refused to look at it. They said, we refuse to look at it because it doesn't answer the question. It answers the question of what's in the document, but it doesn't answer the question as to what defense counsel could have done with the information in that document. Thank you very much. The case will be submitted.
judges: Tashima, Bea, Ikuta